## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **SORINA M. COPENHAVER,** | § | |
| | § | |
| **V.** | § | |
| | § | **A-09-CA-838-SS** |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION** | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 1); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 13); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 16); and Plaintiff's Response to Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 17). Also before the Court is the Social Security Record filed in this case (cited as "Tr."). Both parties have consented to have the undersigned adjudicate the claims.

Having reviewed the parties' briefs, the record, and the relevant law, the undersigned issues the following memorandum opinion and order.

### I.  GENERAL BACKGROUND

On November 1, 2006, Sorina Copenhaver filed an application for disability insurance benefits under Title II of the Social Security Act (Tr. 9). Copenhaver alleged disability beginning January 1, 2001 (Tr. 90). Her claim was initially denied by Notice dated February 14, 2007 (Tr. 54), and again by Notice of Reconsideration dated May 25, 2007 (Tr. 62). Copenhaver timely filed a request for a hearing by an administrative law judge, which was held on November 21, 2008, in Houston, Texas (Tr. 66, 18). Copenhaver testified at the hearing and was represented by her

attorney, Ogona Mahr.[1]  Wallace Stanfield, a vocational expert, also appeared and testified at the hearing (Tr. 18).  The ALJ issued an unfavorable decision dated January 15, 2009, finding that Copenhaver was not disabled within the meaning of the Act (Tr. 6–17).  The Appeals Council declined Copenhaver's Request for Review by Notice dated September 18, 2009, making it the Final Decision of the Commissioner (Tr. 1–3).  On November 17, 2009, Copenhaver brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying her benefits under the Act.

## II.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that Copenhaver has the following severe impairments: diabetes, obesity, cervical spine degenerative disc disease, and status-post two right knee laparoscopic surgeries (Tr. 11).  The ALJ further found that Copenhaver does not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).  In regard to residual functional capacity ("RFC"), the ALJ found that Copenhaver has the RFC to perform light work, except that she must be afforded the option to alternate between sitting and standing at will.  Furthermore, the ALJ found that Copenhaver should avoid heights, climbing, repetitive overhead reaching, repetitive pushing and pulling, and foot controls (Tr. 13–14).  After considering Copenhaver's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Copenhaver can perform through the date last insured (Tr. 16).  Specifically, the ALJ found that Copenhaver was capable of performing the requirements of occupations such as cafeteria cashier (65 in the regional economy; 290,000 in the United States), auto service cashier (75 in the regional economy; 295,000 in the United States), and generic cashier (80 in the regional economy; 290,000

_____

[1]In this appeal, she is represented by Victor Makris.

in the United States) (Tr. 17). Accordingly, the ALJ found that Copenhaver was not disabled, as defined in the Act, at any time from January 1, 2001, the alleged onset date, through September 30, 2006, the date last insured (Tr. 17).

### III.  ISSUES BEFORE THE COURT

Copenhaver contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Copenhaver argues that (1) the ALJ did not properly evaluate evidence related to her alleged mental impairments, which in turn resulted in an RFC finding that failed to properly reflect her mental health limitations; (2) the ALJ should have given controlling weight to the opinion of a recent examining physician, or otherwise sought clarification from the physician; (3) the ALJ erred in failing to find her diminished bilateral manual dexterity, right knee dysfunction, and left knee dysfunction "severe"; (4) the ALJ should have obtained medical expert opinion regarding medical equivalency and her RFC; (5) the ALJ did not properly develop the case by consulting a medical expert to assist in interpreting the medical records and assessing her RFC; (6) the ALJ should not have found her capable of performing at the "light" exertion level based in part on her limited activities of daily living; (7) the ALJ erred in failing to conduct a meaningful evaluation of her credibility; (8) the ALJ erred in failing to determine whether or not she could maintain competitive employment; and (9) the ALJ erred in having declared her past work as a cashier would not be considered past relevant work and then treating it in the decision as past relevant work.

### IV.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court, as dictated by 42 U.S.C. § 405(g), is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard.

*Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990).  Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  *Martinez*, 64 F.3d at 174.  If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed.  *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## V.  ANALYSIS

As an initial matter, the Court must address Copenhaver's repeated reliance on medical evidence that postdates her date last insured.[2]  Throughout her brief, Copenhaver cites to and relies heavily on evidence that postdates her date last insured.  The Commissioner argues that much of this evidence is irrelevant because Copenhaver must prove that she was disabled before her insured status expired.  Copenhaver responds that this evidence is indeed relevant to an examination of the ALJ's

---

[2]Copenhaver's date last insured was September 30, 2006.  Thus, she must prove that she was disabled prior to that date to be entitled to disability insurance benefits under Title II.  *See* 42 U.S.C. §§ 416(i)(3), 423(c).

4

decision to deny benefits and may properly be used to conduct a retrospective examination of a claimant's impairments.

The Fifth Circuit has held that if a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition after the date last insured. *McLendon v. Barnhart*, 184 F. App'x 430, 431 (5th Cir. 2006).   Thus, evidence showing a degeneration of a claimant's condition after the expiration of her Title II insured status is not relevant to the ALJ's Title II disability analysis.   *Id.*   In support of her assertion that this evidence may (and should) be considered, Copenhaver relies on *Likes v. Callahan*, which held that "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates."   112 F.3d 189, 191 (5th Cir. 1997).   The present case, however, is distinguishable from *Likes*, because the evidence Copenhaver relies on does not involve a "retrospective medical diagnosis," but rather involves her treating physicians' views on her impairments as they stood at the time of the treatment—which was after the date last insured.

Given the particular impairments at issue in this case and the nature of the evidence, the undersigned agrees with the Commissioner that this evidence is irrelevant to the question of whether Copenhaver was disabled before her insured status expired.   Accordingly, the ALJ did not err in disregarding it.   The Court will now turn to the specific issues raised in her brief.

A.      **The ALJ did not properly evaluate evidence related to Copenhaver's alleged mental impairments.**

As an initial matter, this appears to be the first time Copenhaver has raised her mental impairments as a basis for disability findings.   The letter written by Copenhaver's former representative states that Copenhaver was alleging disability as a result of diabetes, obesity, cervical

spine degenerative disc disease, and status-post two right knee laparoscopic surgeries, but not for mental health problems.

Copenhaver claims that the ALJ should have found her to suffer from medically-determinable, if not severe, "demonstrable depression" during the adjudicated period. Pl. Br. 7. She cites five references to depression in the record (during the insured period)—including a few self-reports of depression and two therapy sessions—and her Lexapro prescription. Tr. 422–23, 491, 494, 504, 731; Pl. Br. 8. Copenhaver argues that it was error for the ALJ not to include this evidence in his hypothetical question to the vocational expert and in his RFC determination. Pl. Br. 7.

As noted above, Copenhaver must prove that she was disabled prior to the expiration of her insured status to be entitled to disability insurance benefits under Title II. *See* 42 U.S.C. §§ 416(i)(3), 423(c). The ALJ did not err in failing to address Copenhaver's mental impairment because the record contained only isolated references to depression throughout the period at issue, the issue was not raised at the hearing, and she failed to point to any evidence suggesting that depression affected her ability to work. In addition, the ALJ's failure to mention the mental impairment evidence does not mean he failed to consider it.

The Fifth Circuit has found that an ALJ did not err in failing to consider a possible mental impairment when references to it in the record were isolated and sporadic. In *Wilson v. Barnhart*, 210 F. App'x 448, 450 (5th Cir. 2006), the court found no error when the only evidence of depression cited by the plaintiff was one page out of the hundreds of pages of medical records in which her physician indicated "possible depression." In *Leggett v. Chater*, the Fifth Circuit held that the ALJ's failure to consider a claimant's alleged mental impairments was not improper when the claimant never raised the issue of mental impairments until his appeal to Court of Appeals, and,

although the record contained references to anxiety, stress, and depression, those comments were isolated, and the claimant was not treated for those conditions. *Leggett*, 67 F.3d at 565.

The Fifth Circuit has also refused to find error when an ALJ disregarded evidence of depression where the claimant did not demonstrate that the alleged depression affected his ability to work. In *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004), the court found no error when the claimant did not raise depression as an impairment at the administrative level, and on appeal "pointed to no evidence indicating that her alleged depression affected her ability to work." In *Shave v. Apfel,* 238 F.3d 592, 596 (5th Cir. 2001), the court found that the ALJ did not err in determining that the plaintiff did not suffer from a disabling mental impairment—despite being treated for two weeks for mental issues—when the record reflected no more than slight impairment in social, occupational, or school functioning. *See also Gonzales-Sargent v. Barnhart*, (W.D. Tex. 2007) (stating that while the ALJ remained obligated—despite a non-severity finding—to consider the evidence of the degree of the plaintiff's mental condition in the RFC determination, the plaintiff failed to carry her burden of establishing that such evidence precluded her from returning to her past relevant work).

Copenhaver points out that the ALJ may not "arbitrarily reject uncontroverted medical testimony," but the record contains contrary evidence that suggests that her mental functioning remained normal. Pl. Br. 8. Examination reports in 2002 (Tr. 257, 550), 2003 (Tr. 226, 524), and 2004 (Tr. 412, 445, 499) state that Copenhaver had no depression or anxiety. In 2005 (Tr. 200, 204, 206, 212, 313, 431, 443, 462, 487, 490, 492, 497) and 2006 (Tr. 189, 399, 420, 424, 480), examinations show that she had no symptoms of mental impairment. Copenhaver's briefs describe her depression as "waxing and waning," but there is no medical opinion, nor any reference in the record, to support this assertion. Pl. Rsp. 1.

Perhaps the ALJ should have included references to depression in his findings, but they were a minor part of Copenhaver's voluminous medical record, and she did not mention them during the hearing. Her medical records show only sporadic references to depression. Tr. 422–23, 426, 491, 494, 504, 731. Copenhaver did not raise the issue of depression before the ALJ as a cause of her disability, and she points to no evidence that these references to depression indicate a condition that would affect her ability to work.

The Fifth Circuit does not require an ALJ to mention every medical detail he takes into account when making his determinations, though he must consider all impairments, both severe and nonsevere, in the RFC under 20 C.F.R. §§ 404.1523 and 416.923. In *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005), the Court stated, "the ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings."

Copenhaver also objects to the ALJ's failure to include depression as a factor in his RFC. Pl. Br. 9. The ALJ is only required, however, to include in his analysis "disabilities supported by evidence and recognized by the ALJ." *Masterson v. Barnhart,* 309 F.3d 267, 273 (5th Cir. 2002). If the ALJ did not recognize her depression, as is the case here, it was not error for him to exclude depression from the RFC determination. Accordingly, the ALJ did not err regarding evidence of Copenhaver's mental impairment, either in failing to mention it in his findings or in excluding it from his RFC determination.

**B.    The ALJ should have given controlling weight to the opinion of a recent examining physician, or otherwise sought clarification from the physician.**

Copenhaver argues that the ALJ should have given controlling weight to a medical consultative examination ("CE") performed by a physician, Dr. Nalini Dave, whom she claims is the

8

"most recent examining physician." Pl. Br. 9. She also argues that the ALJ erred in failing to contact Dr. Dave because her opinion was "insufficiently supported by examination notes" and required more detailed reports. Pl. Br. 9–10. However, the ALJ did not err in either instance because ample evidence in the record contradicted Dr. Dave's opinion. Further, Copenhaver failed to demonstrate that Dr. Dave should have been re-contacted.

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Newton*, 209 F.3d. at 455. The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Id*. Also, the treating physician's opinions are not conclusive. *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir.1999). The opinions may be assigned little or no weight when good cause is shown. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the evidence. *E.g.*, *Newton,* 209 F.3d. at 455–56*;Brown*, 192 F.3d at 500.

Dr. Dave's examination took place on February 6, 2007, four months after Copenhaver's insured status expired. She examined Copenhaver and determined that she could not lift more than five pounds because of numbness and tingling in her fingers, which would lower her RFC below the full range of "sedentary." Tr. 582. "Sedentary work" involves the ability to lift *no more* than 10 pounds at a time. 20 C.F.R. § 404.1567(a) (emphasis added). The RFC determination, however, shall be made by the ALJ, and a CE's opinions are not an RFC determination and do not carry controlling weight. 20 C.F.R. § 404.1527(e)(2).

While an ALJ may not arbitrarily reject uncontroverted medical testimony, in the present case there is also recent medical evidence (postdating the insured period) that contradicts Dr. Dave's examination. *Fields v. Sullivan*, 985 F.2d 557 (5th Cir. 1993). The testimony of a treating physician will be given "controlling weight" only where this opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at 557; § 404.1527(d)(2).

An examination performed one week after Dr. Dave's exam, on February 15, 2007, found that Copenhaver had normal (5/5) strength in her arms and legs. Tr. 596. Another examination on January 30, 2008, found that she had a normal gait and normal muscle strength, tone, and stability in both her upper and lower extremities. Tr. 657–58. These last two examinations, which also postdate the adjudicated period, contradict the evidence Copenhaver seeks to introduce. The "numbness and tingling" in Copenhaver's hands she reported in the examination with Dr. Dave—which she claims prevented her from lifting over five pounds—was never reported in any medical examination during the insured period and is the only reference of its kind in the entire record. Tr. 582. Before Dr. Dave's examination, nothing in the medical record suggests that this limitation existed during Copenhaver's insured period. No evidence from the insured period explicitly contradicts Dr. Dave's examination; however, the omission of any reference in the record creates a conflict in the evidence.

When such conflicts in the evidence arise, "the Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174; *see Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir.1983) ("The Secretary, rather than the courts, must resolve conflicts in the evidence."). It was not error for the ALJ to decide to give controlling weight to the evidence in the record (from the insured period) that did not support Dr. Dave's finding.

Copenhaver also argues that because her case lacked recent notes by a treating physician, the ALJ should have directed her to seek clarification from the examining physician. Pl. Br. 10 (citing *Newton*, 209 F.3d. at 458).[3] She fails to specify, however, how the reports from the insured period are insufficient or lacking; rather, she seems to argue that because Dr. Dave's examination was unsupported by the rest of the medical record, the ALJ was obliged to re-contact Dr. Dave.

Copenhaver relies heavily on *Likes v. Callahan* to argue that the ALJ should have considered findings of the most recent examining physician because there is no allegation of any intervening event that would have produced an unusually rapid decline in function. The holding in *Likes* is very limited, however, and does not support this argument. *Likes* considered a diagnosis of post-traumatic stress disorder (PTSD),which is a medical issue that can have a long latency period and usually has an easily identifiable triggering circumstance. *Likes*, 112 F.3d at 191. A later "retrospective diagnosis" can demonstrate that a patient was suffering from PTSD in the past, even if contemporary medical records cannot. However, Copenhaver has not advanced any arguments that indicate to the court that a retrospective medical diagnosis is appropriate in her case.

According to 20 C.F.R. § 404.1512(e), an ALJ may re-contact a medical source if the evidence received from that source is insufficient to make a determination. *Newton,* 209 F.3d at 457–58. There are three situations in which a medical source may be deemed inadequate: (1) when the report from the medical source contains a conflict or ambiguity that must be resolved; (2) when the report does not contain all the necessary information; or (3) when the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R.

---

[3]Copenhaver cites *Newton* to support her position that without recent treating physician notes, the most recent consultative examiner's evaluations should receive similar deference as the most reliable indicator of Plaintiff's RFC. In *Newton*, however, the treating and examining physician were the same. *Newton*, 209 F.3d at 458.

§ 404.1512(e).  Sources may also be re-contacted if the basis for their opinion is unclear.  *Cain v. Barnhart*, 193 F. App'x 357, 361–62 (5th Cir. 2006).

The ALJ did not err in failing to re-contact the physician who examined Copenhaver during the adjudicated period because Copenhaver did not satisfy any of the three situations listed in C.F.R. § 404.1512(e), nor did she establish that the opinions of the physicians were unclear or lacking.  Finally, she did not establish that a retrospective diagnosis is appropriate.

### C.   The ALJ erred in failing to find Copenhaver's diminished bilateral manual dexterity, right knee dysfunction, and left knee dysfunction "severe."

Copenhaver argues that the ALJ defied "both common sense and the clear evidence of the record" when he found that her diminished bilateral manual dexterity, right knee dysfunction, and left knee dysfunction are not "severe."  Pl. Br. at 11.  In his decision, however, the ALJ states that he does find her "status-post two right knee laparoscopic surgeries" to be a severe impairment.  Tr. 11.  Copenhaver's argument as to the right knee dysfunction should therefore be disregarded.

A severe impairment "significantly limits your physical or mental ability to do basic work activities," irrespective of age, education, or work experience.  20 C.F.R. § 404.1520(c).  The ALJ should consider the combined effect of all of a claimant's impairments, without regard to whether any such impairment, if considered separately, would be sufficiently severe.  20 C.F.R. § 404.1523.

For her diminished manual dexterity, Copenhaver points to two references during the adjudicated period, one in November 2004 when the physician diagnosed mild carpal tunnel, Tr. 500, and one in March 2006 when Copenhaver reported "symptoms consistent with carpal tunnel" and pain in her hands, Tr. 466–68.  At the time of this second exam, she had motor strength 4/5 in her left arm and 5/5 in her right arm, with some left arm pain and weakness.  Tr. 12.  She has not demonstrated that she suffered from diminished bilateral dexterity that would significantly limit her physical ability to do basic work activities, or to suggest that the ALJ erred in not finding this to be

12

a severe impairment. The other evidence Copenhaver cites postdates the adjudicated period. Pl. Br. 11. There is no evidence that this "tingling" in Copenhaver's fingers was present during the insured period, and—as discussed earlier—the ALJ did not err by not giving prevailing weight to this later acquired medical evidence.

As to her left knee, Copenhaver points to an examination from July 2003 in which she reported falling on her left knee. The physician stated that "she did not suffer any significant damage to her left knee" and found her range of movement normal with some swelling and tenderness in the knee. Tr. 325. The physician prescribed only ice and anti-inflammatories. *Id.* In November 2003, Copenhaver was again examined when she complained of pain in her knee: the physician found the knee "normal" and "unremarkable" with the exception of a "subtle tear or degeneration of the posterior patellar cartilage and lateral femoral condylar cartilage." Tr. 333. Again, Copenhaver has not shown any evidence to suggest that she suffered from diminished bilateral dexterity that would significantly limit her physical ability to do basic work activities, or to suggest that the ALJ erred in not finding this to be a severe impairment.

### D.   The ALJ should have obtained medical expert opinion regarding medical equivalency and Copenhaver's RFC.

Copenhaver argues that it was error for the ALJ not to obtain a medical expert opinion regarding medical equivalency and her RFC, given that she was found to have multiple severe impairments. Copenhaver argues that "with few exceptions, an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Pl. Br. 12.

Copenhaver misconstrues the ALJ's role in disability proceedings. The determinations of medical equivalence and RFC are issues reserved to the determination of the Commissioner (and through him, the ALJ and the Appeals Council). 20 C.F.R. §§ 404.1526(e), 404.1527(e)(2). The reviewing court cannot re-weigh the evidence but may only scrutinize the record to determine

whether it contains substantial evidence to support the Commissioner's decision. *Leggett*, 67 F.3d at 564. If supported by substantial evidence, the Commissioner's findings are conclusive and shall be affirmed. *Crowley*, 197 F.3d at 197.

Medical opinions on issues reserved to the Commissioner (e.g., that a claimant is "disabled" or "unable to work") have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Social Security Ruling (SSR) 96-6p provides:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> > (1) When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> >
> > (2) When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

The opinion of a medical expert is not, as Copenhaver suggests, a mandatory part of the Commissioner's analysis. In addition, the ALJ did not disregard the record in his findings, and he notes that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairments." Tr. 13.

Copenhaver relies heavily on another case, *Brister v. Apfel*, 993 F. Supp. 574, 578 (S.D. Tex. 1998), to argue that the ALJ erred in not obtaining updated medical reports, at least some of which would show that she is more disabled than the medical records from the insured period suggest, even though the later medical records also contain contradictory evidence. In this argument, Copenhaver relies on evidence that postdates the insured period—some of it by years. She argues that there is a non-discretionary requirement that the ALJ obtain an updated medical opinion regarding the

14

cumulative effects of all severe and non-severe impairments when additional medical evidence is received that may change the State medical agency's findings.  Pl. Br. 12.  This argument is flawed in several ways.  First, Copenhaver misconstrues the basic findings of the *Brister* case.  The holding of the case was actually in support of the ALJ's findings.  *Brister*, 993 F. Supp. at 577.  Copenhaver grasps onto one footnote at the end of the case to suggest that there is a "non-discretionary" requirement on the ALJ to obtain updated medical reports.  *Id.* at 578 n.2.  Copenhaver removed the emphasis from the footnote when she quoted the language: "It is clear that when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required."  *Id.* (emphasis in original).  The court went on to state that "in this case, the ALJ did not believe this additional evidence, which included an additional opinion by Plaintiff's sister, would disturb his findings" and therefore the ALJ did not need to obtain updated medical reports.  *Id.*  Thus, even under *Brister*, which is not binding on this Court, an updated report is only required if the ALJ believes that additional medical evidence might change the medical consultant's findings.

Finally, Copenhaver argues that "if the ALJ relied on a non-examining physician's RFC completed substantially prior to the date of the hearing, and which was not based on the full record . . . such an RFC is not one upon which the ALJ may properly rely."  Pl. Br. 12 (citing *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)).  *Frankl,* however, dealt with a vocational, not a medical, expert, and the passage quoted does not relate to the facts in the instant case.  The ALJ made his own RFC determination and did not rely on an outdated one.  Accordingly, this argument fails.

> **E.**     **The ALJ did not properly develop the case by consulting a medical expert to assist in interpreting the medical records and assessing Copenhaver's RFC.**

Copenhaver argues that the ALJ's failure to consult a medical expert to assist in interpreting the medical records and assessing her RFC constitutes a failure to develop the case.  Pl. Br. 13.  The

15

Fifth Circuit imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Newton*, 209 F.3d. at 452.  Reversal, however, is only appropriate if the applicant shows prejudice from the ALJ's failure to request additional information.  *Ripley*, 67 F.3d at 557.  "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Id*. at 557 n.22.

The final State Agency physician review of the medical records was conducted in February 2007, not in May 2007 as Copenhaver claims.  Tr. 586–93.  This means that the examination took place about four months after the insured period ended on September 30, 2006.  The review was intended to ascertain Copenhaver's condition and RFC during the insured period, so the timing of the review, which took place a full one and a half years before the ALJ hearing, is unimportant.  The length of time between a review and a hearing is immaterial.  The key determination is not how disabled she was at the time of the hearing, but how disabled she was during the insured period.

Further, the ALJ indicates that he did not use the State Agency physician's review from February 2007 to decide Copenhaver's RFC; he considered the opinions in the review and noted that the State physicians reached the same conclusion he did.  Tr. 13.  The ALJ did not fail to develop the case by consulting the State Agency physician's findings from February 2007.

### F.     The ALJ should not have found her capable of performing at the "light" exertion level based in part on her limited activities of daily living.

Copenhaver states that "it is improper for the ALJ to conclude from the ability to perform light household chores that Plaintiff also retains an ability to function consistently at or above the sedentary exertional level eight hours per day for sustained periods."  Pl. Br. 14.  She concedes, however, that the ALJ in her case only based his finding that she could perform light work "in part" on her being able to do limited activities of daily living.  Tr. 14–15.

16

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. § 404.1568(b).  The ALJ specified that Copenhaver must be "afforded the option to alternate between sitting and standing at will."  Tr. 14.

It is appropriate for an ALJ to consider the claimant's daily activities when deciding the claimant's disability status.  *Leggett*, 67 F.3d at 565 n.12; *Reyes v. Sullivan*, 915 F.2d 151, 154–55 (5th Cir. 1990) (per curiam).  Inconsistencies in a claimant's testimony and written reports may be relevant in evaluating credibility.  *Perkins v. Shalala*, No. 93-01940, 1994 WL 523788, at *5 (5th Cir. 1994) (unpublished).

The ALJ did not base his finding wholly or even largely on this evidence of daily activities, although he took the activities into account.  In his findings, he states that:

> Due consideration has been given to credibility, motivation, the objective medical evidence and opinion, clinical and laboratory findings, diagnostic tests, the extent of medical treatment and relief from medication and therapy, the claimant's daily activities, the extent, frequency, and duration of symptoms, attempts to seek relief from symptoms, the claimant's earnings record, and all of the evidence of record.

Tr. 15.  The ALJ mentions daily activities in only one of the ten paragraphs in which he discusses, in detail, the evidence he considered in making his RFC determination.

The determination of RFC is a matter left to the determination of the ALJ and the Commissioner.  20 C.F.R. § 404.1527(e).  Copenhaver's argument that the ALJ placed undue weight on her ability to do daily activities misconstrues the plain language of the ALJ's opinion.  The ALJ did not err in his determination that Copenhaver could perform light work.

## G.     The ALJ erred in failing to conduct a meaningful evaluation of credibility.

Copenhaver argues that the ALJ premised his credibility analysis on at least two flawed bases: (1) Copenhaver's limited activities of daily living, and (2) her attempts to work despite her chronic health impairments.  Pl. Br. 15.  She argues that the ALJ's analysis is thus "conclusory,

unrelated to specific meaningful findings by the ALJ or evidence cited from the record, and perfunctory." *Id.* She also claims that the ALJ failed to give "specific reasons" for the credibility finding and did not perform a meaningful analysis of her credibility. *Id.*

The reviewing court must afford great deference to credibility determinations of the ALJ. *Newton*, 209 F.3d at 459. The evaluation of credibility is properly a task for the ALJ. *Harrell v. Bowen,* 862 F.2d 471, 480 (5th Cir. 1988). The ALJ is able to perceive first-hand the claimant at the hearing and form an opinion on credibility. *Falco*, 27 F.3d at163. It is properly within the discretion of the ALJ to determine the disabling nature of the plaintiff's pain, and such determinations are entitled to considerable deference. *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991).

Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment, and the ALJ must consider the plaintiff's subjective evidence of pain. *Id.* It is also appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett*, 67 F.3d at 565 n.12. Specifically, inconsistencies between a claimant's testimony about her limitations and her daily activities may be quite relevant in evaluating credibility. *Casanova v. Astrue*, 327 F. App'x 464, 466 (5th Cir. 2009).

The ALJ found Copenhaver's claim of being unable to perform any work to be contrary to the record. Tr. 14–15. The ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the] residual functional capacity assessment." Tr. 14. The ALJ did not fail to give specific reasons for his decision: he pointed to evidence in the record that during the time the claimant alleged she was unable to be on her feet for long periods of time, she was able to exercise and work. Tr. 609–10, 14.

Copenhaver's alleged onset date of disability is January 1, 2001, and her last date insured was September 30, 2006. During this period she was able to work as a lab technician (Tr. 100), in a sugar beet plant (Tr. 120), as a cashier in a hardware store (Tr. 120), as a flagger on a construction project (Tr.120, 38), in childcare (Tr. 120, 37), and as a veterinary assistant (Tr. 120). She was also able to do some work inside the home (Tr. 398, 420). Though this work might not be substantial gainful activity, nor would the ability to perform light chores around the house be conclusive, it supports the ALJ's finding that she was not as functionally limited as she claimed. Tr. 11, 14–15. The ALJ notes that she complained of trouble turning her neck, but she testified that this did not prevent her from driving. Tr. 14. The ALJ notes also that she has had several physical examinations within normal limits with "good range of motion and no sensory or motor deficits." Tr. 15, 266, 420, 581–82, 595–96, 658, 662.

The ALJ's credibility determination was based on substantial evidence and his own discretion, and went beyond a conclusory analysis. The ALJ gave reasons that were sufficiently specific, as listed above, and did not err in his credibility determination.

### H.    The ALJ erred in failing to determine whether or not Copenhaver could maintain competitive employment.

Copenhaver argues that the ALJ's finding that there were jobs existing in significant numbers in the national economy which she is capable of performing is not, by itself, "sufficient to rebut her demonstration of disability . . . in cases involving impairments that may wax and wane in severity." Pl. Br. 16. Copenhaver argues that the ALJ erred in not finding that she was capable of *maintaining* employment under *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002) and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986) because her symptoms "wax and wane" in severity. *Id.*

In *Watson v. Barnhart,* the Fifth Circuit held that the ALJ erred by failing to determine whether the plaintiff was capable not only of obtaining but also maintaining employment. 288 F.3d

at 218.  The RFC rules (20 C.F.R. § 404.1545) and a Social Security Ruling (SSR 96-8p (1996)), both make clear that the RFC is a measure of the claimant's capacity to perform work "on a regular and continuing basis," and in most cases the ability to maintain employment is adequately taken into account in the RFC determination.  *E.g.*, *Frank*, 326 F.3d at 619; *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir. 2003).  The Fifth Circuit has clearly rejected the idea that an ALJ must in all cases make a separate finding that the claimant has the ability to maintain employment.  *Frank,* 326 F.3d at 619. Any such required extra finding must be predicated on the claimant having an impairment that waxes and wanes in its manifestation of disabling symptoms.  *Id.*; *Dunbar*, 330 F.3d at 672.

The *Watson* decision was fact specific, and the kind of evidence a plaintiff must present to justify a separate finding on maintaining employment is unclear.  In *Frank,* the plaintiff argued that the ALJ erred under *Singletary* and *Watson* in not making a finding that the plaintiff was capable of sustained employment.  *Frank*, 326 F.3d at 619.  The plaintiff did not allege that she could work for short spans of time, but could not hold a job; instead, she contended that she could not work at all. *Id.* at 621.  The court therefore concluded that the ALJ did not err under the *Singletary* or *Watson* standards, because "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* at 619.  The *Frank* court gave an example of evidence that might necessitate a separate finding of a claimant's ability to maintain employment: "For example, if [the Plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination."  *Id*.

In *Perez v. Barnhart,* the court also found that the plaintiff's evidence of "waxing and waning" disability did not rise to the level of impairment required by *Watson*.  415 F.3d at 465.  The plaintiff claimed his "pain would vary in intensity or 'wax and wane' between injections"; he had

"good days and bad days"; and his expert witness testified that "he knew Mr. Perez and it was his professional opinion that Mr. Perez would not be able to work a 30 hour week on a reliable basis." *Id.* at 466.  The court found that such assertions were not sufficient to bring Perez's case within the scope of the *Frank* case.  *Id.* at 465.  The court further remarked that "it is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain."  *Id.*

The Fifth Circuit also held in *Dunbar v. Barnhart*, that "absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC [residual functional capacity]," a separate finding regarding an ability to maintain employment is not required.  330 F.3d at 672.

Copenhaver has not identified or demonstrated the existence of "waxing and waning" symptoms that would satisfy the *Frank* and *Watson* standard, except to state in her complaint and response that the impairments were intermittent and recurring.  Pl. Br. 16, Pl. Rsp. 7–8.  Nothing in the record supports her assertion that her ailments rise to the level in the *Frank* court's hypothetical, as opposed to her experiencing the common changes in intensity acknowledged in the *Perez* case. Additionally—like the plaintiff in *Frank*—she has only contended at the hearing and in her application that she could not work at all.

The evidence required by *Dunbar*—that the plaintiff could start working but could not continue, or that the ALJ did not know that working on a regular and continuing basis is part of the RFC—is completely lacking here.  The ALJ properly determined Copenhaver's RFC and did not err by omitting a *Watson* review.

I.     **The ALJ erred in having declared Copenhaver's past work as a cashier would not be considered past relevant work and then treating it in the decision as past relevant work.**

For Copenhaver's final point of error, she argues that the ALJ erred when he "declared Plaintiff's past work as a cashier would not be considered to be past relevant work," but then in his findings listed "cashier" as past relevant work from which she acquired work skills. Tr. 16, 36; Pl. Br. 16.  Copenhaver argues that to the extent her attorney was influenced by this declaration in questioning the vocational expert (VE), she suffered prejudice. Pl. Br. 16.

The ALJ may have erred in listing "cashier" as past relevant work, but this error had no effect on his final determination for several reasons.  The ALJ is required to determine at step four of the sequential process whether the claimant has the RFC to perform the requirements of her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant has the RFC to perform her past relevant work, she is not disabled, and the analysis does not proceed to step five.  If, however, the claimant is *unable* to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and final step.

In the fifth step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience.  If the claimant can perform other work, she is not disabled.  20 C.F.R. § 404.1520(g).  The ALJ's findings indicate that he did perform the fifth step of the analysis, thus he did not consider Copenhaver's past work as a cashier to be past relevant work that she was still capable of performing.  Tr. 13–17.  Had the ALJ found that the cashiering job at issue was "past relevant work" she was still capable of performing, there would have been no need for him to go through a detailed analysis at the next step to determine if she was able to do other work and to demonstrate that the other work existed in significant numbers in the national economy.  *Id.*

22

At the hearing, the ALJ asked the vocational expert (VE) to "characterize [the Plaintiff's] past work as far as exertional skills."  Tr. 36.  The ALJ did not specifically ask the VE which of Copenhaver's jobs would give her "transferable skills," as she claims.  *Id.*, Pl. Rsp. 8–9.  The VE mentioned a cashiering job, but because the job was held for too short a time and Copenhaver's knee became swollen from too much walking, the judge said "let's take that one out."  Tr. 37.  The ALJ included a stipulation in his findings that Copenhaver must be "afforded the option to alternate between sitting and standing at will," which indicates that he took into account her statement that standing or walking too much while cashiering made her knee hurt.  Tr. 13.

The ALJ later asked the VE if any of Copenhaver's skills transferred from any of her semi-skilled jobs, and he replied that there were "a number of cashiering skills, I mean cashiering jobs," that she was capable of performing that "do allow for an alternating sit/stand."  Tr. 40.  The VE suggested she would be capable of working "as a cafeteria cashier, auto self-service cashier or a generic cashier."  *Id.*  Copenhaver's attorney asked the VE whether in the suggested jobs she would be required to "go out and do other jobs out of the cashiering like busing the tables or putting away items," which was the problem with her cashiering job at the hardware store.  Tr. 41.  The VE replied in the negative, indicating that the jobs he proposed would not be on a sales floor requiring sitting or standing.  *Id.*

Copenhaver has not presented any evidence that she is unable to perform the cashiering jobs listed by the vocational expert in his testimony.  Where the claimant does not offer any evidence contrary to the VE's testimony, "the claimant fails to meet his burden of proof under the fifth step of the disability analysis."  *Perez*, 415 F.3d at 464.

Although the ALJ erroneously listed "cashier" as past relevant work in his findings, that does not appear to have affected the vocational expert's analysis of the jobs that Copenhaver would still

be able to perform, and the ALJ specifically stated in his findings that she was "unable to perform any past relevant work." Tr. 16. The ALJ also stipulated that she must be "afforded the option to alternate between sitting and standing at will." Tr. 13–14. For these reasons, the ALJ listing the cashiering job as "past relevant work" did not affect his determinations or the outcome of Copenhaver's case. The jobs the VE found Copenhaver capable of performing resembled her previous cashiering position, but they had important differences related to the physical exertion required.

## VI. CONCLUSION

In light of the foregoing, the Court AFFIRMS the final decision of the Commissioner and ENTERS JUDGMENT in favor of the Defendant.

SIGNED this 11th day of March, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

24